UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RAYDEL ALVAREZ,

                Petitioner,

v.

                                        Case No. 6:18-cv-583-Orl-28EJK

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

                Respondents.

_____/

## ORDER

THIS CAUSE is before the Court on Petitioner Raydel Alvarez's Petition for Writ of Habeas Corpus ("Petition," Doc. 1), filed pursuant to 28 U.S.C. § 2254, Respondents' Response to the Petition (Doc. 13), and Petitioner's Reply. (Doc. 21). For the reasons set forth below, the Petition is denied.

## I.   PROCEDURAL HISTORY

Petitioner was charged by indictment with first-degree premeditated murder with a firearm, Fla. Stat. § 782.04(1)(a) (Count One); armed burglary of a dwelling while inflicting death, Fla. Stat. § 810.02(2)(b) (Count Two); three counts of false imprisonment, Fla. Stat. § 787.02(1)(a) (Counts Three through Five); and aggravated assault with a firearm, Fla. Stat. § 784.021(1)(a).

(Doc. 14-1 at 152.) On August 28, 2012, following a jury trial, Petitioner was found guilty as charged on all counts (Doc. 14-1 at 741-46) and was sentenced to a term of life in prison (Doc. 14-1 at 770-71). Petitioner appealed, and Florida's Fifth District Court of Appeal ("Fifth DCA") affirmed his convictions and sentences, *per curiam*. (Doc. 14-2 at 1532); *Alvarez v. State*, 135 So. 3d 294 (Fla. 5th DCA 2014).

Following the appeal, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800, Florida Rules of Criminal Procedure. (Doc. 14-2 at 1536.) The motion was denied, and the Fifth DCA affirmed the denial, per curiam. (Doc. 14-2 at 1542–44, 1546); *Alvarez v. State*, 163 So. 3d 1220 (Fla. 5th DCA 2015).

Petitioner then moved for post-conviction relief, pursuant to Rule 3.850, Fla. R. Crim. P. (Doc. 14-3 at 13.) Following an evidentiary hearing on four of Petitioner's claims, the post-conviction court denied relief. (Doc. 14-3 at 175–93, 14-6 at 3–107.) Petitioner appealed, and the Fifth DCA affirmed, *per curiam*. (Doc. 14-6 at 278); *Alvarez v. State*, 237 So. 3d 357 (Fla. 5th DCA 2017).

Petitioner then filed the instant Petition for federal habeas relief, pursuant to 28 U.S.C. § 2254. As the Court can resolve the entire petition on the basis of the record, an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

## II.   LEGAL STANDARDS

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act

Pursuant to the Antiterrorism Effective Death Penalty Act ("AEDPA"), a federal court may not grant federal habeas relief with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).   The meaning

of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker*

*v. Head,* 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* (quoting *Williams,* 529 U.S. at 412–13).

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[1] *Id.* (quotation omitted).

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." However, the state court's "determination of a factual issue . . .

---

[1] In considering the "unreasonable application inquiry," the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson,* 542 U.S. 649, 652 (2004) (per curiam); *see also Bell v. Cone,* 535 U.S. 685, 697 n.4 (2002) (declining to consider evidence not presented to state court in determining whether the state court's decision was contrary to federal law).

shall be presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Parker*, 244 F.3d at 835–36.

## B.   Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. (*Id.* at 687–88). A court must adhere to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." (*Id.* at 690); *see also Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989) ("*Strickland* teaches that courts must judge the reasonableness of the challenged conduct on the facts of the particular case, viewed as of the time of the conduct.").

## III. ANALYSIS

### A. Ground One

In Ground One, Petitioner claims the prosecutor's comments[2] during closing argument shifted the burden of proof in violation of his Fifth Amendment due process rights. (Doc. 1 at 5–6.) Petitioner contends that the prosecutor improperly

> ridiculed the defense theory of how Petitioner's DNA was found on the t-shirt and how Pinero (alleged co-defendant) set him up, and concluded . . . "If you believe that's what happened, find this man not guilty. If you believe the evidence, I submit to you, you should go no farther than the first line on each verdict form and find this man guilty as charged."

(*Id.* at 5.) The defense did not object to the prosecutor's comments at trial but raised the issue as one of fundamental error on direct appeal. (Doc. 30-10 at 314; Doc. 14-2 at 1496–99.) The Fifth DCA affirmed his convictions and sentences, *per curiam.* (Doc. 14-2 at 1532); *Alvarez v. State*, 135 So. 3d 294 (Fla. 5th DCA 2014).

In order to determine whether Petitioner is entitled to relief based on the prosecutor's comments, this Court must engage in a two-pronged analysis. The

---

[2] The Court notes that, although Petitioner poses the issue as one of the trial court "denying petitioner's motion for mistrial" (Doc. 1 at 5), the Court does not find — and neither party provides a citation for — a motion for mistrial in the state record. Moreover, Petitioner did not mention a motion for mistrial in his brief on direct appeal, but, instead, raised the issue as one of the prosecution committing fundamental error by making improper comments during closing argument. (Doc. 14-2 at 1496–99).

Court must first decide "whether the prosecutor's comments were improper;" then "whether any comments found [to be] improper were so prejudicial as to render the trial fundamentally unfair." *Davis v. Kemp*, 829 F.2d 1522, 1526 (11th Cir. 1987). The trial is rendered fundamentally unfair if "there is a reasonable probability that, but for the prosecutor's offending remarks, the outcome . . . would have been different. . . . [A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Kemp*, 846 F.2d 1276, 1283 (11th Cir. 1988) (citations and quotations omitted). *See also Drake v. Kemp*, 762 F.2d 1449, 1458 (11th Cir. 1985).

The prosecutor's comments, taken in context, were not improper. Throughout the State's closing argument, the prosecutor detailed how the evidence satisfied the required elements for conviction on the charged counts. (*See* Doc. 30-10 at 149–208.) Defense counsel then argued that Petitioner was not present at the crime scene, provided an alternative reason why Petitioner's DNA was found on a discarded shirt near the crime scene, and challenged the credibility of co-defendant Pinero and the two surviving victims. (Doc. 30-10 at 215–86.) Counsel also argued that Pinero fabricated Petitioner's involvement in return for a reduced sentence and to protect someone he was afraid of. (Doc. 30-10 at 242–51, 262–64, 283–84).

During the State's rebuttal, the prosecutor addressed defense counsel's arguments and, again, highlighted evidence that supported conviction.

7

(Doc. 30-10 at 286–311).  At the end, after arguing that the witnesses did not misidentify Petitioner, the prosecutor attacked the plausibility of the defense theory that Petitioner had been framed:

> So, let's talk about the only other possible way that this could have happened.  And that is the alleged setup.
>
> Mr. Pinero set Mr. Alvarez up in this case.  He had to somehow know that he was going to commit a robbery, that there were going to be several different people involved, but not Mr. Alvarez, but Mr. Alvarez was going to be a friend of some of them.
>
> So, I need to get some item of clothing of his that I can get his DNA on and I can leave that at the scene. Now, this is all in my mind because I haven't done any of this stuff yet, don't even know I'm going to commit the robbery for another couple of months, but I'm thinking about it.
>
> So, okay. I get the call a couple of months later. Now I've got the white T-shirt.  I don't know how exactly I've got the DNA on it, but I did it.  I snuck DNA off of them, I collected a couple of his handkerchiefs and got some snot and rubbed it all over the T-shirt so now I've got the DNA on the T-shirt.
>
> Let's see now.  I've got to have a warm body to put in the white shirt, because I'm wearing a black DEA shirt.
>
> I can't wear it, so I've got to find somebody else, but I'd better find somebody that looks a lot like Alvarez so that when the victims pick him out . . . they'll mistakenly pick Alvarez because they're really looking at somebody else during the crime.

So, I've got to find a stunt double for Mr. Alvarez and then I've got to get another guy involved who is also going to leave some DNA at the scene so the police can go catch him, too.

And I've got to get some other people involved and I've got to get some cellphones that don't match up. Okay, now I got the phone call. I'm going to jump in my orange hummer, the perfect undercover vehicle for a robbery.

I'm going to drive up to Brevard County where I don't even know where the hell I'm at. I'm going to be directed to a house I've never been to before. And wait a second. While they go in, I'm sitting outside in the driveway. I'm losing control over my setup here.

But somehow I'm going to pull it all off, and after the robbery's all done, and oh, crap, somebody shot the guy. They weren't supposed to do that. Now I'm going to get to the Hummer, I'm going to get in there.

I don't remember if I'm in the front or the back, but I'm getting all of this stuff off of them, I'm tearing the T-shirt off the guy that's wearing the white T-shirt. I'm getting my T-shirt off, I'm getting all the guns together.

And as I drive down the road, only a quarter of a mile away because I don't want the cops to have to work too hard, I'm going to throw it all onto the roadway so it can be found later.

And then a couple months later when these dumb cops finally figure out what's going on, I'll somehow know to call Alvarez and Valdes as the police are coming to my house so that they can arrive a couple minutes later.

If you believe that's what happened, find this man not guilty. If you believe the evidence, I submit

> to you, you should go no farther than the first line on
> each verdict form and find this man guilty as charged.

(Doc. 30-10 at 311–314.)

That argument was not improper. The argument was based on the evidence presented at trial, which included co-defendant Pinero's implication of Petitioner (Doc. 30-8 at 267–85, 287–88, 293–99, 302–303), the two surviving victims' identification of Petitioner in photo lineups (albeit, after they both, first, mistakenly identified a different person) (Doc. 30-6 at 326–31, 344–51, 353–54; Doc. 30-7 at 30–35, 37–49, 80–85; Doc 30-8 at 174–82, 210–12, 233–37, 242), and Petitioner's DNA on a white shirt that was found discarded on the side of the road in an area near the crime scene with the murder weapon and other related evidence (Doc. 30-8 at 8–13, 30–43, 51–53, 61–84; Doc. 30-9 at 357–60, 362–67).

The prosecutor's argument was also consistent with the trial court's subsequent instructions. The trial court directed:

> The Defendant has entered a plea of not guilty. This means you must presume or believe the Defendant is innocent.
>
> The presumption stays with the Defendant as to each material allegation in the information through each stage of the trial unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt.
>
> To overcome the Defendant's presumption of innocence, the State has the burden of proving the

crime with which the Defendant is charged was committed and the Defendant is the person who committed the crime. The Defendant is not required to present evidence or prove anything.

. . .

. . . [I]f after carefully considering, comparing and weighing all the evidence, there is not an abiding conviction of guilt, or if having a conviction it is one which is not stable but one which wavers and vacillates, then the charge is not proved beyond every reasonable doubt and you must find the Defendant not guilty because the doubt is reasonable.

It is to the evidence introduced in this trial and to it alone that you are to look for that proof. A reasonable doubt as to the guilt of the Defendant may arise from the evidence, conflict in the evidence or lack of evidence.

If you have a reasonable doubt, you should find the Defendant not guilty. If you have no reasonable doubt, you should find the Defendant guilty.

(Doc. 30-11 at 29–31.)

Regarding how to weigh the evidence, the court instructed:

It is up to you to decide what evidence is reliable. You should use your common sense in deciding which is the best evidence and which evidence should not be relied upon in considering your verdict.

You may find some of the evidence not reliable or less reliable than other evidence. You should consider how the witnesses acted as well as what they said.

11

(Doc. 30-11 at 31.)  The court instructed that the jury members "may rely upon [their] own conclusion about [a] witness. A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness." (Doc. 30-11 at 32.) The court also explained a number of factors the jury should consider, including whether a witness's testimony "agree[d] with the other testimony and other evidence in the case." (Doc. 30-11 31–32.)  Jurors are presumed to follow their instructions, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), and Petitioner has presented nothing to rebut that presumption.

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In re Winship,* 397 U.S. 358, 364 (1970). When considered in the context of the prosecution's entire closing argument and the trial court's subsequent instructions to the jury, the prosecutor did not urge the jury to convict Petitioner merely if they did not believe his testimony. Instead, throughout closing arguments, the prosecutor pointed out how the evidence supported the elements of the charged offenses and how the evidence was inconsistent with the theory asserted by the defense — that Petitioner was not present during the crime.  In the now-challenged final statement, the prosecutor merely urged the jurors to find Petitioner guilty if they believed that evidence.

12

Moreover, given the DNA evidence and the testimony of co-defendant Pinero and the surviving victims, the prosecutor's statement did not render the trial fundamentally unfair; there is no reasonable probability that, but for the prosecutor's statement, the outcome of the trial would have been different. *See Williams*, 846 F.2d at 1283.

Because the Fifth DCA's decision on this issue on direct appeal was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts, Ground One is denied.

## B.    Ground Two

In Ground Two, Petitioner claims that trial counsel erred by failing to investigate Petitioner's purchase of a 9-mm semi-automatic pistol that was admitted as State's Exhibit 137 at trial. (Doc. 1 at 7.) Petitioner claims that the pistol was not connected with the November 19, 2007 offenses because it was purchased after that date. (Doc. 1 at 7–8.) He argues the State improperly used Pinero's "false and misleading testimony" to connect the pistol to the crime, that the State "denied [him] due process by failing to disclose the fact that the 9-mm pistol was not in any way linked to the State's case against [him]," that Pinero's testimony that the pistol "could" be the one used by Valdes (a different co-defendant) was purely speculative, that the outcome of the trial would have been different absent such testimony, and that the state post-

conviction court's conclusion to the contrary constitutes an unreasonable determination of the facts. (*Id.*).

Petitioner raised this argument as the first issue in his Rule 3.850 motion for post-conviction relief. (Doc. 14-3 at 17–24.) In denying the claim, the post-conviction court explained:

> At the time that the police were in Miami arresting Pinero on January 10, 2008, the Defendant drove to Pinero's residence in a black pick-up truck with Alejandro Valdes in the passenger's seat. After arresting the Defendant and Valdes for the charged offenses, police seized a nine millimeter semiautomatic gun from the glove compartment box in front of where Valdes was seated.

> At the beginning of the Defendant's trial, the defense moved in limine to exclude this nine millimeter semiautomatic gun and testimony regarding it. (See Exhibit "A," pgs. 916–17). The State argued at trial that Co-Defendant Alejandro Valdes was the man wearing the black "DEA" t-shirt carrying a semi-automatic gun in his waistband. In arguing the motion in limine, Mr. McCarthy contended the semi-automatic gun was "prejudicial because the jury might infer some connection to Mr. Alvarez, which can't be dispelled because Mr. Valdes isn't here." (See Exhibit "A," p. 918, lines 14–20). The Court denied the defense's motion in limine. (See Exhibit "A," p. 918, lines 24–25).

> Prior to Sergeant Carlos Reyes being called to testify regarding seizing the semi-automatic gun, defense counsel moved again to exclude this evidence and testimony "before the jury gets any wind of it." (See Exhibit "A," pgs. 1640–44 ). Defense Attorney McCarthy argued that the gun was more prejudicial than probative. The State argued that even if this

semi-automatic gun was not used as part of the charged crimes and that the semi-automatic gun that was actually used was dumped somewhere else, the Defendant was found in a vehicle with Valdes with a semi-automatic weapon that was similar to the one carried on November 19. At this juncture in the trial, Judge Reinman ruled if Mr. Pinero testified that Valdes carried a semi-automatic weapon similar to this, then the judge would allow the exhibit in. (See Exhibit "A," p. 1652).

Nelson Pinero then testified that Alejandro Valdes had a semi-automatic gun during the incident on November 19, 2007. (See Exhibit "A," pgs. 1734–35). Pinero testified that the Defendant was carrying a .357 revolver. (See Exhibit "A," 1733-34). Th[e] State showed Pinero the semi-automatic gun found in the glovebox and Pinero testified that it "could be" "the same or a similar one to the one Mr. Valdes had on the day in question." (See Exhibit "A," p. 1738, lines 16–19). On cross-examination by defense counsel, Pinero testified that during his proffer he said there were two revolvers involved in the incident and he did not mention a semi-automatic gun. (See Exhibit "A," p. 1906–07). Pinero testified that he never said anything about the semi-automatic gun to the police because they did not throw it away and it was a legal gun. (See Exhibit "A," p. 1969).

The State recalled Sergeant Carlos Reyes at the Defendant's trial and he testified that the Defendant was driving a black pick-up truck with Alejandro Valdes in the front passenger seat. Sergeant Reyes testified that inside the glove compartment box was a semiautomatic pistol (introduced as State's Exhibit 137), and when police were collecting it, Valdes made a "spontaneous comment when he saw that we had collected it, saying, 'That's mine.'"

In the subject postconviction motion, the Defendant alleges that defense counsel rendered

ineffective assistance for not investigating the purchase of the semi-automatic gun (State's Exhibit #137) to establish that it was purchased after the date of the offense, November 19, 2007, and therefore, was not connected to charged crimes. The Defendant states under oath in the subject postconviction motion, that he told his defense counsel that he was the "actual owner of the pistol, and that he had lawfully purchased the firearm after the offense was alleged to have occurred." The Defendant asserts that "[a] reasonable investigation would have shown that the Defendant was the owner of the 9-mm pistol, the Defendant lawfully purchased the pistol from Florida Gun Center after the date of the offense in question, and the pistol was not associated with or linked to the charged crimes."

The bullet that killed Carlos Corcho was not from a semiautomatic gun, but rather from a Smith and Wesson revolver. (See Exhibit "A," pgs. 2092, 2101–102). Even if the nine millimeter gun (State's Exhibit #137) had nothing to do with the charged offenses, the Defendant was still found in a vehicle with Valdes with a semi-automatic gun that resembled the one used in this home invasion robbery. If defense counsel had in fact done as the Defendant now suggests that he should have, the outcome of the trial would not have changed. The Defendant has shown no prejudice. Showing that State's Exhibit #137 was purchased after the crime in question and belonged to the Defendant would have arguably further incriminated the Defendant. If State's Exhibit #137 belonged to the Defendant (not Valdes) as the Defendant now claims, this would have definitively shown that the Defendant owned or possessed a firearm similar to the one involved on November 19, 2007. The Defendant and/or his co-defendants could have dumped or discarded the nine millimeter semi-automatic gun that was actually used, and the Defendant could have purchased the day after the murder another nine millimeter semi-automatic gun

16

to replace it. Pinero's trial testimony regarding seeing a semi-automatic used in the offenses similar to the one retrieved from the glove compartment box in a vehicle that Defendant was driving would still have been relevant even if that gun was in fact purchased by the Defendant the day after the crime. (State's Exhibit #137). Furthermore, Valdes told police that State's Exhibit #137 belonged to him. Even if defense counsel had shown that State's Exhibit #137 was not actually linked to the crime and the semi-automatic gun belonged to the Defendant, not Valdes, this would have also shown the lengths to which Valdes would cover for the Defendant as his partner in crime who committed Carlos Corcho's murder.

(Doc. 14-3 at 182–85.) The Fifth DCA affirmed the denial, per curiam. (Doc. 14-6 at 278); *Alvarez v. State*, 237 So. 3d 357 (Fla. 5th DCA 2017).

The state post-conviction court's[3] decision was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. Although the question before the Court is one of ineffective assistance of counsel, the issue that underlies Ground Two — whether or not evidence of the nine millimeter semi-automatic pistol was admissible into evidence — is a question of state law, to which the Court must defer unless the ruling affected the fundamental fairness of the trial. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a

---

[3] *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (When presented with an appellate court's per curiam affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning.").

federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (superseded by statute on other grounds)) ("[A]lthough 'the issue of ineffective assistance — even when based on the failure of counsel to raise a state law claim — is one of constitutional dimension,' [the Court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law.")); *Sims v. Singletary*, 155 F.3d 1297, 1312 (11th Cir. 1998) ("We will not grant federal habeas corpus relief based on an evidentiary ruling unless the ruling affects the fundamental fairness of the trial."). "Additionally, such trial court errors are subject to the harmless error analysis and will not be the basis of federal habeas relief unless the error 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Sims*, 155 F.3d at 1312 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

Here, even if the trial court erred under state law, which the Court does not decide, any such error was harmless.  First, Pinero's testimony about the nine millimeter semi-automatic pistol (State's Exhibit #137) was not plainly false.  Pinero did not testify that the pistol was the exact pistol carried by

18

Valdes during the crime.  He testified merely that Valdes carried a semi-automatic pistol during the crime and that the semi-automatic pistol shown to him during direct examination, which was later admitted as State's Exhibit # 137, "could" be the same or a similar gun as the one Valdes carried during the crime. (Doc. 30-8 at 285, 289.)

Second, although Petitioner claims that the jury could have viewed the evidence of the semi-automatic pistol "as showing Petitioner's bad character or propensity to possess firearms" and that there is "a reasonable possibility that the evidence of the firearm could have contributed to [his] conviction" (Doc. 21 at 6), his argument is not persuasive.

Petitioner cites to *Agatheas v. State*, 77 So. 3d 1232 (Fla. 2011), in support of his position that he was prejudiced by the admission of the allegedly unrelated semi-automatic pistol.  (Doc. 21 at 9–10.)  However, the facts are distinguishable. [4]  In *Agatheas*, the murder weapon was never recovered, and the unrelated gun was found in the possession of the defendant.  In the present case, the State introduced forensic evidence that the bullet that killed victim Carlos Corcho was not from a semi-automatic weapon, but from a Smith and Wesson revolver. (Doc. 30-9 at 255–64, 266–68, 366.)  The State also introduced

---

[4] Moreover, in *Agatheas*, the Florida Supreme Court determined the unrelated firearm was inadmissible as a matter of purely state, not federal, law.  When reviewing a section 2254 habeas Petition, this Court is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 67.

19

into evidence a Smith and Wesson revolver, alleged to be the murder weapon, that had the victim's blood on it. (Doc. 30-9 at 255–64, 357-60, 362–66.) The revolver was found on the side of a road near the crime scene in the same area as a white shirt on which investigators found Petitioner's DNA; that shirt matched the description given by Pinero and the surviving victims of the shirt Petitioner wore at the time of the crime. (Doc. 30-6 at 279–80; Doc. 30-7 at 30–31; Doc. 30-8 at 8–13, 30–43, 52–53, 61–84, 280–81.)  Pinero and the two surviving victims also identified Petitioner as one of the perpetrators of the armed burglary and the person who killed victim Carlos Corcho and described the firearm carried by Petitioner as a revolver, not a semi-automatic firearm. (Doc. 30-6 at 273, 283-84, 328–30, 347–51, 353–54; Doc. 30-7 at 30, 41–49; Doc. 30-8 at 267–85, 288, 293–99.)  Further, testimony presented to the jury was that the semi-automatic pistol belonged to co-defendant Valdes, not to Petitioner. (Doc. 30-9 at 195.)  Petitioner was not alleged to have owned or possessed the semi-automatic pistol at any time during or after the crime, let alone to have used it to murder the victim.

Given the substantial evidence admitted against Petitioner, the trial court's admission into evidence of the allegedly unrelated nine millimeter semi-automatic pistol (State's Exhibit #137) — which Pinero testified merely *could* be the pistol carried by a *different* defendant who was not on trial with Petitioner and which was not used to kill the victim — did not substantially or

injuriously influence the jury's verdict. That is, even had the trial court ruled differently based on the state law identified by Petitioner, the outcome would not have changed.

Because Petitioner has not demonstrated that the alleged error affected the fundamental fairness of the trial, he has not demonstrated prejudice from the alleged error of trial counsel. Accordingly, the state court's decision was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. Ground Two is denied.[5]

## C.   Ground Three

In Ground Three, Petitioner claims trial counsel erred by failing to investigate Petitioner's cell phone records. (Doc. 1 at 10.) Petitioner states that Detective Reyes collected three cell phones that belonged to him and co-defendant Valdes; further, co-defendant Pinero testified that all of his communications with Petitioner were by cell phone and that Petitioner called him the morning of the crime. (Doc. 1 at 10–12.) Petitioner contends that trial

---

[5] To the extent that Petitioner argues post-conviction counsel erred by "fail[ing] to seek and preserve evidence identified by Petitioner" that relates to grounds two, three, four, five, six, seven and nine, and that he was, therefore, denied meaningful access to the judicial process (Doc. 1 at 9), that argument does not entitle him to relief. "The Supreme Court has long held that there is no constitutional right to counsel in post-conviction proceedings, . . . which necessarily means that a habeas petitioner cannot assert a viable, freestanding claim for the denial of the effective assistance of counsel in such proceedings." *Chavez v. Sec'y, Fla. Dep't of Corr.*, 742 F.3d 940, 944 (11th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); 28 U.S.C. § 2261(e)).

counsel's investigation would have shown that Petitioner owned the two cell phones seized from him "and that both phones were in his actual possession on November 19, 2007.   In addition, the contents of the phone[s] would show . . . that Petitioner did not contact Nelson Pinero on the date in question." (Doc. 1 at 11.)  Petitioner additionally contends that records from Metro PCS for the cell phones would have established Petitioner's location on the date of the crime. (*Id.*).

Petitioner raised this claim as the second issue in his Rule 3.850 motion for post-conviction relief. (Doc. 14-3 at 24–29.)  The state post-conviction court denied relief, following an evidentiary hearing on the issue, and the Fifth DCA affirmed the denial, per curiam. (Doc. 14-3 at 186-87; Doc. 14-6 at 278); *Alvarez v. State*, 237 So. 3d 357 (Fla. 5th DCA 2017).

In denying relief, the post-conviction court explained:

> At the evidentiary hearing on February 18, 2016, the cell phone records were not presented into evidence, nor was a specific cell phone linked to the Defendant.  Defendant's postconviction claim under ground two was altogether unsupported and speculation at best. Moreover, at trial, defense counsel used the lack of cellphone information in a strategic move that was to the Defendant's advantage. (See Exhibit "A," p. 2467). The Court finds that ground two fails because the Defendant did not meet his burden of showing that counsel's performance was deficient, or that he was prejudiced as a result.

(Doc. 14-3 at 187.)

Contrary to Petitioner's assertions, the post-conviction court's decision is supported by the record and is not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. At trial, Sergeant Reyes testified that he seized cell phones from the possession of Petitioner, Pinero, and Valdes, but that the subscriber information for the phones was associated with other people, not Petitioner, Pinero, or Valdes. (Doc. 30-8 at 226–27.)

Moreover, as the state court noted, Petitioner did not present his cell phone records at the evidentiary hearing; thus, he merely speculates that the records would show he did not call Pinero the day of the crime and that he was not present at the crime scene. *See Tejada v. Dugger,* 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that vague, conclusory, or speculative allegations cannot support a claim of ineffective assistance of counsel).

Finally, trial counsel used the lack of cell phone records to assert, during closing argument, that the police investigation was deficient and that investigators failed to corroborate Pinero's self-serving testimony with the cell phone records of Petitioner and Valdes. (Doc. 30-10 at 263–64.) The Court does not find trial counsel's strategy so "patently unreasonable that no competent attorney would have chosen it." *See Adams v. Wainwright,* 709 F.2d 1443, 1445 (11th Cir. 1983).

Because Petitioner has not shown that the state court's decision was contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts, Ground Three is denied.

## D.   Ground Four

In Ground Four, Petitioner claims that trial counsel erred by failing to call Johanna Vazquez as a defense witness. He claims Ms. Vazquez was available to testify at his trial with appropriate notice, that she would have testified that Petitioner was with her on the day of the crime, and that she contacted trial counsel prior to trial and informed counsel of her alibi testimony. (Doc. 1 at 14–17.) He claims that, had her testimony been presented to the jury, "the jury would have found her to be more credible than [Pinero] who had an interest in the outcome of the trial" due to his plea deal. (Doc. 21 at 14.)

Petitioner attached to his Petition a sworn affidavit from Ms. Vazquez, which he also included with his Rule 3.850 motion. (Doc. 3 at 137–38; Doc. 14-3 at 123–24.)  In the affidavit, Ms. Vazquez avers, in pertinent part:

> Through my conversations with Mr. Perez[, Petitioner's initially retained trial counsel,] I learned that the offense for which [Petitioner] was charged was alleged to have occurred on November 19, 2007.
>
> However, after thinking about this information, I realized that [Petitioner] could not have been involved in the alleged criminal activity because he was with me on November 19th.  I specifically recall

24

this day and the time I spent with [Petitioner] because he was ill and November 19th was my dog, Finito's, birthday.  After realizing this, I contacted Mr. Perez and informed him of this information.  In response, Mr. Perez informed me that I would be used as a witness with this information in the event the issue went to trial.

Subsequently, due to financial reasons and other issues, Mr. Perez and Attorney Mr. Kenneth N. Weaver moved to withdraw from [Petitioner's] case. After this, the Office of the Public Defender was assigned to represent [Petitioner], and Mr. George McCarthy, Assistant Public Defender, was assigned as his counsel of record.

I then contacted Mr. McCarthy and recounted the same information to him that [Petitioner] could not have been involved in the alleged crime because he was with me on the 19th.  In addition, I told Mr. McCarthy that [Petitioner] had been staying with me in my home during the previous three or four days due to being ill with either a fever or a cold.  But on November 19th [Petitioner] was feeling better so we spent the day at my family's apartment relaxing and celebrating Finito's birthday with my parents.  In response, Mr. McCarthy told me that I would be a witness in the event the issue went to trial.  I then provided Mr. McCarthy with the phone number of where I could be reached and told Mr. McCarthy that I would be available to testify should the issue go to trial.

Based on this conversation, I expected to receive a telephone call from Mr. McCarthy telling me whether the case was going to trial, and where and when I would be needed as a witness.  However, I did not receive a call from Mr. McCarthy.  Instead, I received a call just two days prior to [Petitioner's] trial from [a volunteer at the Brevard County Detention Center] informing me of [Petitioner's] trial date.  But

because of the sudden short notice, I was unable to attend [Petitioner's] trial. I subsequently learned that [Petitioner] was found guilty.

At all times, and with adequate notice, I would have been available as a witness and would have testified at [Petitioner's] trial as to the facts stated in this Affidavit.

(Doc. 3 at 137–38; Doc. 14-3 at 123–24.)

Petitioner raised this claim as the third issue in his Rule 3.850 motion.

(Doc. 14-3 at 30–33.)   Following an evidentiary hearing, the state post-

conviction court denied relief, explaining:

As his third ground for postconviction relief, the Defendant alleges that his defense counsel was ineffective for failure to call Johanna Vazquez as an alibi witness. The Defendant alleges that Ms. Vazquez would testify that the Defendant could not have been involved in the November 19, 2007 home invasion robbery because he was with her. The Defendant alleges that he provided defense counsel with her phone number and that with adequate notice she would testify at the Defendant's trial. On March 22, 2011, Attorney George McCarthy filed a Witness List on which Johanna Vazquez's name was listed. In her 2014 affidavit, Ms. Vazquez attested that the Defendant was with her on November 19, 2007, and that she would have testified if she had been notified. She said she was contacted by someone who volunteered at the Brevard County Detention Center notifying her of the Defendant's trial day to be held two days later.

An evidentiary hearing was held on this ground on February 18, 2016. Ms. Vazquez did not testify at the postconviction evidentiary hearing. For the trial in this case, the Defendant had the benefit of two

26

seasoned and well experienced criminal defense
attorneys. Mr. George McCarthy had been practicing
in criminal law for twenty-five years, having handled
hundreds of jury trials and dozens of murder trials by
the time that he represented Mr. Alvarez, the
Defendant in this case. Mr. John Randall "Randy"
Moore had thirty-one years of criminal law experience,
also having handled hundreds of jury trials and dozens
of murder trials.

Mr. McCarthy, who this Court finds to be a
credible witness, testified that he was aware of Ms.
Vazquez at the time of trial and she had nothing
helpful to offer. Mr. McCarthy testified that the first
he learned about Ms. Vaquez's purported alibi was
during these postconviction proceedings in 2016. Mr.
Moore testified that if Ms. Vazquez could have
provided an alibi for the Defendant as she outlined in
the 2014 postconviction affidavit, it would have been
important, but he was not aware of any such testimony
by Ms. Vazquez at the time of the Defendant's trial in
2012. The Court finds based on the testimony that
defense counsel was aware of Ms. Vazquez, but her
testimony was not helpful to the defense at the time of
trial. The Court therefore finds that counsel's
performance was not deficient, nor was the Defendant
prejudiced.

(Doc. 14-3 at 187–88.) The Fifth DCA affirmed the denial, per curiam. (Doc. 14-
6 at 278); *Alvarez v. State*, 237 So. 3d 357 (Fla. 5th DCA 2017).

The record supports the state court's decision. Mr. McCarthy, one of

Petitioner's trial attorneys, testified at the evidentiary hearing that he had

been in contact with Ms. Vazquez before trial and recalled that Ms. Vazquez

did not have anything to say that was helpful to the defense. (Doc. 14-6 at 35.)

He testified that the contents of Ms. Vazquez's affidavit did not reflect the

conversations that he had with her prior to trial and that the affidavit was the first he had heard that she could attest to Petitioner's whereabouts on the date of the crime. (Doc. 14-6 at 38.)  Mr. Moore, co-counsel for Petitioner at trial, similarly testified at the evidentiary hearing that Mr. McCarthy was the person who spoke with Ms. Vazquez and that, prior to the post-conviction proceedings, he had not learned that Ms. Vazquez could provide alibi testimony. (Doc. 14-6 at 87–88.) He affirmed that such testimony would have been important and would absolutely have been testimony that he tried to elicit at Petitioner's trial if it had been known before trial. (Doc. 14-6 at 88.)

Petitioner argues that the testimony elicited from Mr. McCarthy and Mr. Moore is refuted by the fact that the defense listed Ms. Vazquez as a potential witness at trial. (Doc. 1 at 16.)  That argument is not persuasive.  Both Mr. McCarthy and Mr. Moore were aware of Ms. Vazquez prior to trial and could have added her name to the witness list for any number of reasons.  The presence of her name on the witness list does not indicate what the substance of her testimony would have been.

Petitioner also argues that the substance of Ms. Vazquez's testimony was not refuted. (Doc. 1 at 16.) However, as noted, both Mr. McCarthy and Mr. Moore testified that the defense was aware of Ms. Vazquez and communicated with her prior to trial, but that the post-conviction proceedings were the first time they learned of her purported alibi testimony. Notwithstanding Ms.

28

Vazquez's affidavit, the state court specifically found Mr. McCarthy's testimony (and therefore implicitly found Mr. Moore's consistent testimony) credible. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'" *Consalvo v. Sec'y for Dep't of Corr.*, 664 F. 3d 842, 845 (11th Cir. 2011) (quoting *Marshall v. Lonberger*, 459 U.S. 422 (1983)). Petitioner has not demonstrated clear and convincing evidence to overcome the presumption that the state post-conviction court's factual findings were correct. *See* 28 U.S.C. § 2254(e)(1).

The state court's decision was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. Ground Four is denied.

### E.    Ground Five

In Ground Five, Petitioner contends that trial counsel was ineffective because counsel failed to call law enforcement agent Samantha Tipper-Booth as a witness. (Doc. 1 at 17.) Petitioner claims that, through the testimony of Ms. Tipper-Booth, trial counsel would have been able to lay a foundation for the admission into evidence of three composite drawings. (Doc. 1 at 17.) Petitioner believes the composites, which were based on descriptions from the two surviving victims and which the victims gave high percentages of accuracy,

did not resemble Petitioner in any way. (Doc. 1 at 17–19.) He claims that the victims' later uncertainty when presented with his photograph is consistent with his assertion that he was not present at the crime. (Doc. 1 at 19.)

Petitioner raised this claim as issue four in his Rule 3.850 motion. (Doc. 14-3 at 33–36.) Following an evidentiary hearing, the post-conviction court denied the claim, and the Fifth DCA affirmed the denial, per curiam. (Doc. 14-3 at 188–89; Doc. 14-6 at 278); *Alvarez v. State*, 237 So. 3d 357 (Fla. 5th DCA 2017).

The post-conviction court explained:

> As his fourth ground for postconviction relief, the Defendant alleges that defense counsel was ineffective for failure to call Samantha Tipper-Booth as a defense witness and for not presenting competent evidence to substantiate the defense strategy that the in-court identification of the Defendant by Jennifer Corcho and Elizabeth Hernandez was mistaken. An evidentiary hearing was held on this claim on February 18, 2016.
>
> At trial, the defense argued that Jennifer Corcho and Elizabeth Hernandez were mistaken when they identified the Defendant as being involved in the home-invasion robbery. (See Exhibit "A," pgs. 2429–2433, 2454–2464). At the evidentiary hearing, Mr. Moore testified that a strategic decision was made not to call Ms. Tipper-Booth because her testimony would be more harmful than helpful to the defense. Specifically, Mr. Moore testified that he believed the composite resembled the Defendant and had Ms. Tipper-Booth been a witness, the composite could have been introduced[,] further incriminating the Defendant. The Court finds that defense counsel

30

> made a reasonable strategic decision not to call Ms.
> Tipper-Booth and the Defendant was not prejudiced.

(Doc. 14-3 at 188–89.)

The record supports the state court's decision. At the evidentiary hearing, Mr. McCarthy, trial counsel, testified that one of the composite sketches did not clearly eliminate Petitioner, and the defense team decided that introducing them into evidence would just "muddy up" the identification issue in the case. (Doc. 14-6 at 40–41.) Mr. Moore, co-counsel for the defense, testified at the evidentiary hearing that he thought one of the composite sketches resembled the Petitioner and that, of the surviving victims, "one was 70 percent sure that [the composite] accurately reflected Mr. Alvarez's face and that the other one was eighty percent." (Doc. 14-6 at 89, 94.) He explained: "I didn't want the jury to hear that this picture which I thought looked like Mr. Alvarez, although it was a composite, there was a strong certainty that that was in fact a representation of Mr. Alvarez." (Doc. 14-6 at 94.) Given the other evidence of misidentification, Mr. Moore did not believe introducing the composites would help Petitioner's defense. (Doc. 14-6 at 89).

Petitioner has failed to demonstrate that no reasonable attorney would have made the strategic decision that his trial counsel did with respect to calling Samantha Tipper-Booth as a witness at trial. *See White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992) ("The test has nothing to do with what

the best lawyers would have done. Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.").

The state court's decision was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts.  Therefore, Ground Five is denied.

### F.   Ground Six

In Ground Six, Petitioner claims counsel erred by not moving to exclude the testimony of Laura Wenz, a crime laboratory analyst at the Florida Department of Law Enforcement, who testified concerning the presence of Petitioner's DNA on the white t-shirt found with other evidence of the crime. (Doc. 1 at 21.)  He claims the DNA was not relevant because nothing proved that he wore the shirt on the day in question. (Doc. 1 at 23.)

Petitioner raised this claim as issue five in his motion for post-conviction relief. (Doc. 14-3 at 37–41.)  The post-conviction court denied the claim, and the Fifth DCA affirmed the denial, per curiam. (Doc. 14-3 at 189–90; Doc. 14-6 at 278); *Alvarez v. State*, 237 So. 3d 357 (Fla. 5th DCA 2017).

The post-conviction court explained:

> Defendant alleges that his counsel was ineffective for failure to move to exclude testimony from FDLE analyst Laura Wenz regarding testing on the white t-shirt that matched the Defendant's DNA. The

> Defendant failed to show that counsel's performance was deficient or that he was prejudiced.
>
> At trial, Jennifer Corcho, Elizabeth Hernandez, and Nelson Pinero identified the Defendant as the person wearing a white t-shirt who killed Carlos Corcho. The white t-shirt was located in an area on the side of the roadway near the crime scene with other distinctive items connected with the murder home robbery including two revolvers, a black "DEA" t-shirt, and zip ties. (See Exhibit "A," pgs. 969, 970, 1026, 1038, 1050, 1058, 1095, 1112–1113, 1135, 1131–1345, 1352, 1458, 1487–88, 1499, 1501, 1511–13, 1567, 1729, 1745). Contrary to the Defendant's assertion in the subject postconviction motion, testing the white tshirt was relevant to identification of the murderer in this case. Therefore, counsel was not deficient for failure to object or move in limine to exclude this testimony/evidence. Even assuming arguendo that counsel had objected or moved in limine, legally the objection would have been overruled and the motion in limine denied.

(Doc. 14-3 at 189–90.)

As with Ground Two, even though the question before the Court is one of ineffective assistance of counsel, the issue that underlies Ground Six — whether or not the DNA evidence was relevant and admissible — is a question of state law, and "federal habeas corpus relief [will not be granted] based on an evidentiary ruling unless the ruling affects the fundamental fairness of the trial." *Sims v. Singletary*, 155 F.3d 1297, 1312 (11th Cir. 1998).

33

Under Florida law, relevance is defined as "evidence tending to prove or disprove a material fact." Fla. Stat. § 90.401.  Evidence is relevant if it has "a tendency to establish a fact in controversy or to render a proposition in issue more or less probable." *Zabner v. Howard Johnson's Inc. of Fla.*, 227 So. 2d 543, 545 (Fla. 4th DCA 1969).[6]  The existence of Petitioner's DNA on a discarded shirt found with other items related to the crime, including the murder weapon, tends to render the proposition that Petitioner was involved in the crime more probable.[7]  When viewed in connection with testimony that the intruder wearing the white shirt was the one who killed the victim, the existence of Petitioner's DNA on the white shirt tends to render more probable the proposition that Petitioner killed the victim.  Therefore, Petitioner has not established that the admission of the DNA evidence affected the fundamental fairness of the trial.

---

[6] The Court notes that this definition mirrors the federal definition. The Federal Rules of Evidence provide that, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

[7] Petitioner's argument that the evidence is prejudicial because Ms. Wenz testified that she could not tell when or the order in which the DNA contributors wore the shirt is not persuasive.  The members of the jury were presented with Ms. Wenz's testimony to that effect (Doc. 30-10 at 24–25) and then weighed the evidence as they were instructed (*see, e.g.,* Doc. 30-11 at 31 (instructing the jury: "It is up to you to decide what evidence is reliable. You should use your common sense in deciding which is the best evidence and which evidence should not be relied upon in considering your verdict. You may find some of the evidence not reliable or less reliable than other evidence.")).  *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987) ("[J]uries are presumed to follow their instructions.").

Because the state court decided that any motion to exclude the challenged evidence would have been denied, Petitioner cannot demonstrate the deficient performance or prejudice required by *Strickland*. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to raise a non-meritorious issue).

Petitioner also claims he was prejudiced because the prosecutor improperly asserted in closing: (1) that the DNA profile shows Petitioner was wearing the shirt on the date of the crime when he shot and killed the victim, and (2) that Ms. Wenz testified the DNA showed Petitioner was a major contributor and thus he was the last one to wear the incriminating shirt. (Doc. 1 at 22.).[8]

This argument is meritless. The prosecutor did not misconstrue the evidence or mislead the jury. "The sole purpose of closing argument is to assist the jury in analyzing the evidence. While a prosecutor may not exceed the evidence in closing argument, he may state conclusions drawn from the evidence." *United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997) (internal citations and quotation marks omitted).  From the evidence presented

---

[8] It does not appear that Petitioner raised this claim in the state court. (*See* Doc. 14-3 at 37–41; Doc. 14-6 at 195–99.)  Nonetheless, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2).

at trial, the prosecutor drew the conclusion that Petitioner was the person wearing the shirt on the day of the crime and that Petitioner killed Mr. Corcho.

The prosecutor did not state that Ms. Wenz testified Petitioner was the last one to wear the shirt.  Instead, the prosecutor stated:

> And I believe you'll recall the testimony of Laura Wenz, our DNA lady from FDLE, who says that the most recent person wearing the shirt *generally* would be the one leaving the strongest trace, the major contributor.  And who was the major contributor in fact, the only contributor on the fluorescent [area] on the white t-shirt? The Defendant, Raydel Alvarez.

(Doc. 30-10 at 304 (emphasis added).)

Upon review, Ms. Wenz testified that a person who wore an item of clothing *the longest* may leave more DNA than someone who wore the item for a shorter period of time and that a person who wore the item of clothing *more often* would leave more DNA, depending on how often the clothing was washed. (Doc. 30-10 at 25–26.)  She also testified that a number of things — such as UV light, sunlight, heat, moisture, and chemicals — can cause DNA to degrade and that if the clothing were laundered, she would not expect to find a complete DNA profile on the clothing because detergents break down the DNA. (Doc. 30-9 at 345; Doc. 30-10 at 48.)  The prosecutor could reasonably construe from the evidence that the most recent person wearing the shirt may leave the strongest trace, given the shorter amount of time for circumstances to cause the DNA to degrade.

In any event, the trial court instructed the jury that what the attorneys said during closing arguments was not evidence and that the jury was to look to the evidence alone for proof of guilt beyond a reasonable doubt. (Doc. 30-10 at 149; Doc. 30-11 at 30–31.) Thus, even if the prosecutor erred, given the other evidence against Petitioner and the trial court's instructions to the jury, the prosecutor's statement was not so prejudicial as to render the trial fundamentally unfair. *See Williams*, 846 F.2d at 1283; *Davis*, 829 F.2d at 1526.

The state court's decision was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. Ground Six is denied.

### G.   Ground Seven

Ground Seven also relates to DNA evidence on the white t-shirt. Petitioner asserts counsel erred by failing to move to exclude evidence concerning the fluorescent areas on the white t-shirt. He argues that Analyst Wenz did not authenticate those areas and did not establish a chain of custody, because she testified to only swabbing the t-shirt but portions of the t-shirt were also cut. (Doc. 1 at 24–27.)

Petitioner raised this claim as issue six in his Rule 3.850 motion for post-conviction relief. (Doc. 14-3 at 41–48.)  The post-conviction court denied the claim, explaining:

FDLE Crime Laboratory DNA Analyst Wenz testified that she performed on the white t-shirt a test that produces fluorescent reactions for bodily fluids. (See Exhibit "A," pgs. 2190-92, 2224-27). Ms. Wenz testified that she found a fluorescent area that she was able to test in addition to a swabbing of neck and shoulder seams and the armpit areas. (See Exhibit "A," p. 2192). The Defendant asserts that his counsel was ineffective for failure to object to Ms. Wenz's testimony or any questions concerning the t-shirt because Wenz "failed to prove authentication of the two fluorescent areas because she could not identify at trial the material or substance that caused the two fluorescent reactions." The Defendant failed to fulfill both prongs of *Strickland*. To be admissible, the State did not have to prove the exact bodily fluid that caused the chemical reaction on the t-shirt. Ms. Wenz testified that it could be many types of bodily fluids, including saliva and perspiration. (See Exhibit "A," p. 2192–2193).

Next, the Defendant alleges that his counsel was ineffective for failure to object on the grounds that Ms. Wenz did not establish the chain of custody of the cut-out of removed sections of the t-shirt. Again, the Defendant has failed to establish that counsel's performance was deficient, or that he was prejudiced. Ms. Wenz did not testify to portions of the t-shirt being cut out prior to the DNA testing she performed. When fabric is processed by FDLE for DNA, as part of that process portions of the fabric (in this case, the t-shirt) are cut to be DNA tested. (See Exhibit "A," pgs. 2191–92). Therefore, questioning regarding any cutting of the t-shirt was irrelevant, because it was DNA tested by Analyst Wenz. Furthermore, the Defendant's own expert testified that the Defendant's DNA was on the white t-shirt. The Defendant himself admitted he owned the white t-shirt. The white t-shirt was tested for DNA and defense expert Terry Melton conceded that the Defendant's DNA was on the white t-shirt. (TT. 2074).

38

(Doc. 14-3 at 190–91.)   The Fifth DCA affirmed the denial, per curiam. (Doc. 14-6 at 278); *Alvarez v. State*, 237 So. 3d 357 (Fla. 5th DCA 2017).

As mentioned regarding Ground Six, the admissibility of evidence is a matter of state law, on which habeas relief will not be granted unless an erroneous ruling affects the fundamental fairness of the trial. *Sims,* 155 F.3d at 1312. In this case, even if counsel erred by failing to object to the testimony or by failing to move to suppress it, which the Court does not decide, Petitioner has demonstrated no prejudice. The relevance of Petitioner's DNA on the white shirt, which was found near other evidence related to the crime, was to prove that Petitioner wore the shirt at some point in time or that the shirt was his. Petitioner testified at trial that the shirt could be his and described it as one that he wore at Pinero's house after working on Pinero's boat. (Doc. 30-10 at 77.) The defense's own expert also testified that the mitochondrial DNA from a hair collected from the back of the white t-shirt matched Petitioner's mitochondrial DNA. (Doc. 30-9 at 237–38.) Given the additional DNA evidence on the white shirt and Petitioner's admission that the white shirt could be his, Petitioner has not established that the admission of the DNA evidence analyzed by Ms. Wenz affected the fundamental fairness of the trial.

Petitioner also appears to argue that the State improperly claimed the substance of the fluorescent area on the white t-shirt was definitively saliva or

mucus, rather than perspiration. (Doc. 1 at 25.) However, during closing argument, the prosecution actually stated that Ms. Wenz found an area of fluorescence on the white t-shirt that "was some kind of bodily fluid, saliva, mucus, whatever," and that the DNA matched Petitioner's DNA. (Doc. 30-10 at 160–161.) The prosecutor then noted the testimony of the surviving witnesses, who claimed the intruder who killed Mr. Corcho kept holding the white shirt up to cover his face. The prosecutor deduced that the intruder would "get whatever, spit, snot -- I don't know -- something coming out of their face, holding it up over there." (Doc. 30-10 at 161.) The prosecutor's comment merely drew a conclusion from the evidence presented. *See Bailey*, 123 F.3d at 1400. This claim does not entitle Petitioner to relief.

The state court's decision was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. Ground Seven is denied.

## H.    Ground Nine

In Ground Nine, Petitioner contends that counsel was ineffective "for not disclosing to [him the] material nature of Nelson Pinero's allegations against him[,] causing [him] to reject [the] State['s] favorable pre-trial plea offer of 35 years." (Doc. 1 at 29.) Petitioner alleges that the State conveyed, during jury selection, a plea offer of 35 years' imprisonment, but that, without consultation with Petitioner, trial counsel rejected the plea offer. (Doc. 1 at 29.)

Petitioner raised this claim as issue eight in his Rule 3.850 motion for post-conviction relief. (Doc. 14-3 at 49–51.) The post-conviction court denied the claim following an evidentiary hearing, and the Fifth DCA affirmed the denial, per curiam. (Doc. 14-3 at 192; Doc. 14-6 at 278); *Alvarez v. State*, 237 So. 3d 357 (Fla. 5th DCA 2017).

The post-conviction court explained:

> As his eighth ground for postconviction relief, the Defendant alleges that his trial counsel was ineffective for not disclosing to him the material nature of Nelson Pinero's allegations against him causing the Defendant to reject the State's pre-trial plea offer of thirty-five years in prison. The Defendant alleges that the statements made by Pinero on January 10, 2008 to Detective Reyes and on May 2, 2008, to the State Attorney's Office were not made available to the Defendant for his consideration prior to rejecting the State's thirty-five year plea offer. The Defendant claims that defense counsel did not advise the Defendant "of Nelson Pinero's highly prejudicial hearsay statement." An evidentiary hearing was held on this ground on February 18, 2016.
>
> At the beginning of the trial, the record shows that the Defendant rejected the State's plea offer of thirty-five (35) years in prison, followed by twenty (20) years on probation. (See Exhibit "A," p. 415). Mr. McCarthy testified that he did discuss discovery in the case with the Defendant prior to the Defendant's decision to reject the State's plea offer. Mr. McCarthy left the final decision as to whether to accept or reject the State's plea offer to the Defendant. The Court finds credible Mr. McCarthy's testimony that he reviewed the evidence with the Defendant prior to Defendant's decision regarding the plea offer. The Court does not find credible the Defendant's testimony at the

> evidentiary hearing. The Court notes that the Defendant did not testify at the post-conviction evidentiary hearing that he would have accepted the State's plea offer, albeit he made this representation in the written postconviction motion. The Court finds that counsel's performance was not deficient and the Defendant was not prejudiced.

(Doc. 14-3 at 192.)

The record supports the state court's decision. During the evidentiary hearing, Petitioner testified that defense counsel did not tell him about Pinero's allegations regarding the weapon found in the vehicle Petitioner was driving the day of Petitioner's arrest or the phone call Petitioner purportedly made to Pinero the day of the crime. (*Compare* Doc. 14-6 at 81–82 *with* Doc. 30-8 at 267–68; Doc. 30-9 at 190–91, 193, 195–96.)   Petitioner stated that, although defense counsel visited him in jail every six to eight months, counsel did not mention that evidence. (Doc. 14-6 at 82.)   He testified that Mr. McCarthy conveyed the thirty-five year plea offer to him during trial and that he turned it down because he did not know the strength of the State's case. (Doc. 14-6 at 81–82.)

However, Mr. McCarthy, lead trial counsel for Petitioner, testified that he obtained copies of Pinero's statement through discovery years before trial, he would have shared that information with Petitioner, and the defense team assumed Pinero would be a witness for the State at trial. (Doc. 14-6 at 43, 49–50.) Mr. McCarthy testified that he also would have conveyed every plea offer

42

to Petitioner, including the plea offer that was extended during jury selection, and that he always left the decision of accepting or rejecting the plea offer to his clients. (Doc. 14-6 at 43–44, 60–62.)  Review of the trial transcript reveals that, on August 16, 2012, the parties put the plea offer on the record:

> MR. MOORE:    Judge, I have one short thing.
>
> THE COURT:    Yes, sir.
>
> MR. McMASTER: I just wanted the record to reflect that Mr. McCarthy and I have had continuing discussions this morning about a potential plea.
>
> An offer was conveyed of 35 years DOC followed by 20 years probation.  I believe Mr. McCarthy conveyed that to his client and it was rejected.
>
> I just wanted to make sure that the record was clear.
>
> MR. MOORE:    Judge, all that is correct.
>
> MS. BARRETT:  Yes.
>
> THE COURT:    Okay. Thank you.

(Doc. 30-5 at 62–63.)

Petitioner claims the record, thus, contradicts trial counsel's claim that counsel discussed the plea offer, Pinero's possible trial testimony, and the strengths and weaknesses of the case before Petitioner rejected the plea offer. He is mistaken.  The record reveals merely that there had been ongoing plea negotiations that day and that Petitioner ultimately rejected the offer made to

him when it was conveyed to him by trial counsel. This record provides no information about the ongoing plea negotiation process or what evidence counsel discussed or reviewed with Petitioner that day or in the years leading up to trial. (*See also* Doc. 14-6 at 64.)

Petitioner bears the burden of overcoming a state court factual determination by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here, Petitioner has presented no clear and convincing evidence to rebut the presumption that the state court's decision to credit counsel's testimony was correct. Accordingly, Petitioner has failed to demonstrate that the state court's decision was contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. Ground Nine is denied.

## I.     Ground Eight

Finally, in Ground Eight, Petitioner claims that, but for trial counsel's cumulative errors, there is a reasonable probability that the outcome of Petitioner's trial would have been different. However, since each of Petitioner's ineffective assistance of counsel claims has been found without merit, Petitioner has not demonstrated cumulative error. *See e.g., Morales* v. *Sec'y, Fla. Dep't Corr.,* 710 F. App'x 362, 365 (11th Cir. 2017) ("[W]e have rejected all of the claims of error before us. There are, therefore, no errors to cumulate.").

## IV.   CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To make such a showing, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009).  However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims and procedural rulings debatable or wrong. Further, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Thus, the Court will deny Petitioner a certificate of appealability.

## V.   CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** that:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2. Petitioner is **DENIED** a certificate of appealability.

3. The Clerk of Court shall enter judgment in favor of Respondents and close this case.

45

**DONE** and **ORDERED** in Orlando, Florida on January ___, 2021.

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties
OrlP-4 1/15

46